ELIZABETH KUHN, ADMINISTRATRIX, ETC., v. THE TOWNSHIP OF WALKER.

*Municipal corporations—Defective highway—Contributory negligence.*

1. The duty of a township to erect railings or barriers along a highway which passes over an embankment depends somewhat upon the width of the traveled way.[1]

---

[1] See *Carver v. Plank-Road Co.*, 61 Mich. 584, as to the statutory duty of townships to widen, or protect by fencing, any highway passing along the bank of any river, lake, or water-course which has become reduced to a width of less than 50 feet by the washing away of the bank, or from other cause; and *Malloy v. Township of Walker*, 77 Mich. 448, holding that where a roadway is built at such a height between hills, and so narrow, as to require barriers or railings to make it reasonably safe and fit for public travel, it becomes the duty of the proper township to erect them,

2. One who, from choice, drives a strange horse within two or three feet of the edge of an artificial embankment, over which the highway passes, and which is not protected by a railing or barrier, instead of keeping nearer the center of the traveled way, which is 40 feet wide at that point, and is injured by his horse taking fright at some object outside of the traveled way, and going over the side of the embankment, is guilty of such negligence as will bar a recovery.[1]

Error to Kent. (Grove, J.) Argued June 28 and 29, 1893. Decided October 27, 1893.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*McGarry & McKnight,* for appellant.
*Uhl & Crane,* for defendant.

McGRATH, J. Plaintiff's intestate, Julius Kuhn, while riding along a highway just outside of the city of Grand Rapids, was carried down an embankment, and thrown from his buggy, receiving serious injuries, from which he died after the commencement of this suit. He was going south, and the highway curved to the east. The earth had been filled in over a culvert, so that the roadway at the point where the injury occurred was from 12 to 15 feet above the natural surface. There were no walls supporting the earth, except at the culvert, just south of where the horse went down. Opposite this point, on the west side of the roadway, a barrel stood in the roadway. A conduit from 12 to 15 inches in diameter brought water from an old mill-race to a point a few feet west of the barrel. A wooden trough had been connected with the east end of this pipe, the east end of which trough was

---

and, failing so to do, the township is liable for injuries resulting from its neglect of duty. See, also, *Sharp v. Tp. of Evergreen,* 67 Mich. 448. But see *Beall v. Tp. of Athens,* 81 Mich. 536, and *Mineral Springs Co. v. City of St. Clair,* 96 Id. 466, upon the question of proximate cause.

[1] See *Flagg v. Railway Co.,* 96 Mich. 30, and cases cited in note.

over the barrel, and a portion of the water from the large pipe was thus carried into the barrel, and used to water horses. The most of the water coming through the large conduit fell into the gully below. There was some conflict as to the width of the traveled way. It was about 50 feet from the barrel to the easterly edge of the way. From 8 to 10 feet immediately east of the barrel sloped towards the barrel, and was not traveled, except as horses were driven thereupon to water. This would leave about 40 feet of traveled way.

Julius Kuhn and his son, who was then about 16 years of age, were in the buggy. The time was 5 o'clock, on a July morning. The left wheels of the buggy were within two or three feet of the edge of the embankment. As they reached a point nearly opposite the barrel, the horse took fright, either at the barrel, the noise of the water as it fell into the barrel, or a boulder which stood some distance west, but outside of the traveled way, and shied to the east. The boy pulled upon the right line, the horse stopped, backed a little; the father then caught the lines, but the horse refused to obey the rein, but continued to the east, going down the embankment, breaking through or jumping over a board fence at the bottom of the embankment. The fence caught the buggy, and its occupants were thrown over the dash-board. The horse was hired that morning from a livery barn, and had not been driven before by father or son. The court directed a verdict for the defendant, and plaintiff appeals.

It is insisted on behalf of plaintiff that it was the duty of the township to erect a railing along the easterly edge of this way, so as to prevent the possibility of such an accident. But the duty of a township in this respect must depend somewhat upon the width of the way provided for travel. Here the way was 40 feet in width. The embankment was not steep, but supported itself. There was an

abundance of room to keep away from the edge of the bank. Plaintiff's intestate was not in any sense a passenger, but must be presumed to have been directing and controlling the movements of his son. They could have kept 30 feet from the edge of the way, and still have been within the traveled way, and some distance from any danger on the westerly side, even though there had been danger on that side, which does not appear from the record. Instead of doing so, they drove within two or three feet of the danger which it is claimed that the township should have provided against. They drove where they did, not of necessity, but from choice. The danger was as apparent to them as it could have been to the township authorities. While it may be urged that roads must be so maintained as to be reasonably safe against the consequences of the momentary shying of a horse, the knowledge that horses are liable to shy is not confined to township authorities, and townships cannot be made insurers of persons who, with strange horses, unnecessarily and voluntarily drive so near embankments that the least deflection of the animal driven exposes them to apparent dangers,—who themselves take the greater hazard instead of the lesser, which is open to them, and which the township has provided.

The circuit judge was right in directing a verdict for defendant, and the judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.